IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT HARDESTY and REGINALD JOLLY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:03-CV-1033-F WO |
| CPRM CORPORATION and VIJAY PATEL, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case arises out of Defendant Vijay Patel's refusal to allow Plaintiffs to remain in the hotel room they rented from the hotel he managed because they were accompanied by a guide dog. Plaintiffs' Second Amended Complaint (Doc. #24), filed July 22, 2004, sets out the following claims: disability discrimination in violation of the Americans with Disabilities Act ("ADA") (Count I), disability discrimination in violation of Alabama Code §§ 21-7-1-9, 3-1-7, and 24-8-3 (Count II), negligence (Count III), wantonness (Count VI), intentional infliction of emotional distress (Count V), negligent failure to train and supervise (Count VI), and breach of contract (Count VII). The cause is presently before the Court on the Defendants' Motion for Partial Summary Judgment (Doc. #32), filed April 12, 2005. For the reasons stated in this Memorandum Opinion and Order, the Court concludes that the Defendants' Motion for Partial Summary Judgment is due to be GRANTED.

## I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1332 (diversity), 1343 (civil rights) and 1367 (supplemental jurisdiction). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations of each.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

### III. FACTS

Plaintiff Reginald Jolly ("Jolly") has one leg and has been considered legally blind since 1983.  He wears an artificial leg and has a seeing eye dog named Bronson.  On July 13, 2003, Jolly and Bronson were traveling with Plaintiff Robert Hardesty ("Hardesty") through Montgomery, Alabama to the Alabama or Florida beaches.  Defendant Vijay Patel ("Patel") is the general manager and corporate secretary of the Defendant CPRM Corporation ("CPRM"), which owns the Diplomat Inn in Montgomery.

Upon arriving at the Diplomat Inn, Hardesty parked his truck and went inside to obtain a room while Jolly and Bronson remained in the vehicle.  Jolly gave Hardesty his credit card for payment of the room.  Hardesty asked the hotel clerk for accommodations for

two and asked to be able to view the room because he was traveling with a handicapped friend. The clerk gave Hardesty a key, and Hardesty looked at the room. Hardestly then returned to ask for an alternative room. He told the clerk that his friend was blind and had one leg and that he needed an outside room. The clerk exchanged the room for an outside room. The clerk was polite to Hardesty, and Hardesty did not mention the presence of the seeing eye dog to the clerk.

    Hardesty then drove his truck to the room and unloaded the luggage. A short time later, the men were settled into the room and Jolly was sitting on the bed preparing to remove his artificial leg. Hardesty then saw Patel peering through the room's window through the crack between the curtains. Patel states that he heard a dog bark, peered through the curtains and saw the dog, and then called the front desk to see if the persons renting the room had mentioned a dog, before knocking on the room door. Hardesty states that Bronson did not bark while in the room and that approximately ten seconds after he saw someone peering through the window, the door, which had been pushed closed but not latched, flew open.

    Patel told the men that they could not have the dog in the room. Hardesty told him that it was a seeing eye dog. Bronson was wearing a harness and a leash at the time. Patel responded that two weeks earlier someone had checked in with a dog that had chewed on furniture and destroyed his property, and that they could not have the dog in the room. Hardesty got a book from his luggage that contained Alabama and Federal laws on disability accommodation and explained that Patel could not refuse occupancy to them.

4

Hardesty states that at this time Patel began ranting and raving and told them that he could do anything he wanted. Hardesty explained that he could be sued for failure to accommodate them. Patel told Hardesty to go ahead and sue him. Jolly told Patel that he would call the police, and Patel, using profanity, replied that he could call the police because this was a civil matter and there was nothing they could do.

Patel and Hardesty walked back to the hotel clerk, who checked Hardesty and Jolly out of the hotel and voided the credit card charge. Hardesty and Jolly removed their things from the hotel room and left; it was after dark and raining at the time. The two men continued to another hotel, which had no vacancies, and then checked into a third hotel, where they stayed the night. They proceeded on their trip the following morning.

The experience was very stressful for Hardesty. He states that he has had trouble sleeping and that he is angry that Patel would do such a thing. Jolly was also angry and disturbed by the incident, and was further embarrassed that Patel saw him in the process of removing his artificial leg and with the leg removed.

## IV. DISCUSSION

*A. Count II: Discrimination under Alabama Law*

Defendants argue that no cause of action exists for disability discrimination under the Alabama Code. (Mot. Summ. J., 10-11.) Plaintiffs respond that they may recover civil damages for violations of Alabama Code §§ 21-7-3 through 21-7-5 and § 3-1-7 pursuant to *Martingson v. Cagle*, 454 So.2d 1383 (Ala. 1984). (Resp. Opp'n Summ. J., 4-5.)

Alabama law makes it a misdemeanor to deny blind persons equal accommodations at hotels and lodging places or to refuse to allow a guide dog to accompany a blind person in such locations. Ala. Code §§ 21-7-3 through 21-7-5; § 3-1-7. In *Martinson v. Cagle*, the Alabama Supreme Court clarified its much earlier statement that "every criminal act which injures the person or property of another is also a civil tort, redressable by the courts." 454 So.2d at 1385 (quoting *Hardie-Tynes Mfg. Co. v. Cruse,* 66 So. 657, 661 (1914)). The Court clarified that, although an act that constitutes a crime can also be the basis of a civil action, civil liability will not exist automatically, but "only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted." *Id.* The court found that counts alleging "only that the criminal acts were committed and that the Martinsons were thereby injured" did not state a civil cause of action. *Id.*

Like the causes of action based on criminal acts in *Martinson*, Plaintiffs' Count II alleges only that the Defendants violated a criminal statute and that the Plaintiffs were damaged. The language of the Alabama Code does not create a private right of action under these sections, nor has any court found a civil cause of action to exist pursuant to these sections. Certainly, to the extent that the circumstances that constitute a misdemeanor in this case also constitute a legitimate civil cause of action, such as a claim under the ADA for violation of the legal rights of the Plaintiffs or a claim of negligence or wantonness for breach of a duty owed to the Plaintiffs, that claim may continue. However, Plaintiffs may

6

not maintain a separate or additional cause of action under Ala. Code §§21-7-3 through 21-7-5 or §3-1-7. Therefore, Defendants' Motion for Summary Judgment is due to be GRANTED as to the Plaintiffs' state law claims for disability discrimination.

*B. Counts III, IV, and VI: Negligence and Wantonness Claims*

Defendants argue that Plaintiffs' claims for negligence, wantonness, and negligent failure to train and supervise fail because Plaintiffs have not demonstrated actionable damages. (Mot. Summ. J., 5-6.) Plaintiffs concede that damages are a required element of these claims, but argue that the embarrassment and emotional distress they suffered are sufficient. (Resp. Opp'n Summ. J., 5-8.)

Alabama law does not allow a cause of action for negligent infliction of emotional distress. *See, e.g. AALAR, Ltd., Inc. v. Francis*, 716 So.2d 1141, 1144 (Ala. 1998) ("negligently causing emotional distress is not an independent tort in Alabama, but, rather, that it is part and parcel of the traditional tort of negligence"). Neither does it permit every plaintiff to maintain a suit for negligence or wantonness when the only damages are mental or emotional harm. *Id.* at 1146 ("Courts therefore have placed substantial limitations on the class of plaintiffs that may recover for emotional injuries . . . .").

Instead, "[i]n negligence actions, Alabama follows the 'zone-of-danger' test, which limits recovery of mental anguish damages to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Ex parte Grand Manor, Inc.*, 778 So.2d 173, 179 (Ala. 2000)

7

(citation and quotations omitted) (finding that plaintiffs bringing a claim for negligent manufacture of their mobile home were within the zone of danger due to risk of harm from inappropriate water pressure and faulty electrical wiring); *see also AALAR*, 716 So.2d at 1147 (providing a lengthy analysis of various theories and tracing the development of the zone of danger test in Alabama). The zone of danger test has been routinely applied in Alabama cases to permit recovery of emotional damages only by those who suffered actual or imminent risk of physical harm. *See, e.g. AALAR*, 716 So.2d at 1147 ((holding that one plaintiff bringing negligence and wantonness claim against car rental company for failing to remove rental car from stolen car list could not recover mental anguish damages because he was never at risk of physical harm but that fact question existed as to whether other plaintiff was at risk of physical harm when police pulled weapon on him); *White Consol. Industries, Inc. v. Wilkerson*, 737 So.2d 447, 449 (Ala. 1999) (holding that plaintiffs were not in the zone of danger and could not recover for emotional distress because they were at not home when their house caught on fire); *Wal-Mart Stores, Inc. v. Bowers*, 752 So.2d 1201, 1204 (Ala. 1999) (same); *Daniels v. E. Ala. Paving, Inc.*, 740 So.2d 1033, 1049 (holding that plaintiffs who were in the car during car accident could recover for emotional damages because they were within zone of danger).

In opposition to application of the zone of danger test, the Plaintiffs rely on the cases of *Webb Wheel Products, Inc. v. Hanvey*, 2004 WL 3016999 (Ala.), *City of Mobile v. Lester*, 804 So.2d 220 (Ala.Civ.App. 2001), and *George H. Lanier Memorial Hosp. v. Andrews*,

2004 WL 2634298 (Ala.). The Court notes that the first and last of the cases cited are presently unpublished.[1] In the remaining case, *City of Mobile v. Lester*, the court expressly applied the zone of danger test. 804 So.2d at 229. The court affirmed the award of mental anguish damages to Ms. Patterson, who was within the zone of danger due to separated sewer pipes, a rat and a gas leak in her home, and reversed the award of mental anguish damages

---

[1]The Court does acknowledge that, to the extent that the case of *George H. Lanier Memorial Hospital v. Andrews*, 2004 WL 2634298 (Ala. 2004), is valid precedent, a contradiction exists in Alabama law. In *Andrews*, the Alabama Supreme Court held that the emotional damages that the plaintiffs had been permitted to recover in a negligence/wantonness action where the hospital mistakenly harvested the corneas of their deceased child were not excessive. *Id.* at *10. The Court did not apply the zone of danger test, instead stating that "[i]t is well settled that a plaintiff may recover compensatory damages for mental anguish, even when mental anguish is the only injury visited upon the plaintiff." *Id.* For this proposition, the Court cited only *Kmart v. Kyles,* 723 So.2d 572, 578 (Ala. 1998) and *Alabama Power Co. v. Harmon*, 483 So.2d 386, 389 (Ala. 1986). *Id.* A close reading of *Alabama Power* illustrates that the court there reaches two conclusions: first, that according to long-established contract law, mental anguish damages are recoverable in *breach of contract actions* where the contractual duty is bound up with matters of mental concern, and second, that "claims for damages for mental anguish need not be predicated upon the presence of physical *symptoms*." 483 So.2d at 389 (emphasis added). It is unclear how these accurate statements of contract and damages law (even in conjunction with the statements of law in *Kmart v. Kyles*, which itself only cites to *Ala. Power*) support the proposition that "it is well settled" that plaintiffs in negligence actions may recover for mental anguish damages regardless of their physical injury or immediate risk or harm. At most, this holding can be viewed only as a minority position in light of the repeated strong statements by the same court, after lengthy analysis, that the zone of danger test is the proper law in negligence cases in Alabama. *See, e.g. Ex parte Grand Manor*, 778 So.2d at 179 ("[i]n negligence actions, Alabama follows the 'zone-of-danger' test"); *AALAR*, 716 So.2d at 1147 ("the current state of Alabama law is consistent with the "zone of danger" test").

The remaining case cited by the Plaintiffs, *Webb Wheel Products, Inc. v. Hanvey*, 2004 WL 3016999 (Ala.), does not present a similar concern. *Hanvey*, a retaliatory discharge action where the plaintiff was permitted to recover for both emotional distress and monetary loss, is inapposite to the negligence action currently before the Court.

9

to the remaining plaintiffs who could not demonstrate that they were at any risk of physical harm. *Id.* at 229-230.

In this case, the Plaintiffs have not alleged that they were physically injured or that they were placed in immediate risk of physical harm. Therefore, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the claims for negligence, wantonness, and negligent failure to train and supervise.

C.  *Count V: Outrage*

Defendants argue that Plaintiffs have not established a claim of intentional infliction of emotional distress. Under Alabama law, intentional infliction of emotional distress is not a separate cause of action, but is encompassed by the tort of outrage. *See Ex parte Lumbermen's Underwriting Alliance*, 662 So.2d 1133, 1134 n.1 (Ala. 1995). To prevail on a claim of outrage, a plaintiff must prove that: (1) the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from its conduct; (2) the defendant's conduct was extreme and outrageous; and (3) the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it. *Jackson v. Ala. Power Co.,* 630 So. 2d 439, 440 (Ala.1993) (citing *Am. Rd. Serv. Co. v. Inmon,* 394 So. 2d 361 (Ala.1980) (adopting the tort of outrageous conduct in Alabama)). The conduct complained of must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon,* 394 So. 2d at 365. Thus, the

tort of outrageous conduct only applies "in the most egregious circumstances." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993).

The determination as to whether "evidence is sufficiently extreme or outrageous to support a cause of action for outrageous conduct is for the trial court to make as a matter of law." *Carter v. Harris,* 64 F. Supp. 2d 1182, 1194 (M.D. Ala. 1999) (granting summary judgment on outrage claim). In analyzing whether conduct is sufficiently extreme and outrageous to support a claim of outrage, the Court must be mindful that outrage is a very limited cause of action. *See, e.g., Thomas,* 624 So. 2d at 1044. The Alabama Supreme Court has found that a jury question exists in only three types of cases: (1) those involving wrongful conduct with regard to family burials; (2) those involving barbaric methods employed to coerce an insurance settlement; and (3) those involving egregious sexual harassment. *See, e.g., Potts v. Hayes,* 771 So. 2d 462, 465 (Ala. 2000) (nurse failed to establish jury question on outrage claim against her employer and former supervisor despite having suffered emotional and physical distress when accused publically of being a drug addict, thief and danger to the public); *Carter v. Innisfree Hotel,* Inc., 661 So.2d 1174 (Ala. 1995) (affirming summary judgment on outrage claim where plaintiffs alleged that a "peeping tom" watched them through scratches in their hotel room's bathroom mirror).

Because the facts of this case are not within the categories of outrageous behavior identified by the Alabama Supreme Court and otherwise fall far short of the kind of reprehensible situation for which Alabama provides relief under the tort of outrage, the

Defendants' Motion for Summary Judgment is due to be GRANTED as to the claim of outrage.

*D. Count VII: Breach of Contract*

Defendants argue that Plaintiffs' claims for breach of contract fail because Plaintiffs have sustained no recoverable damages. Specifically, they argue that mental and emotional damages alone are insufficient to maintain a breach of contract action because breach of a contract for a hotel room does not involve significant foreseeable emotional damages. (Mot. Summ. J., 8-10.) Plaintiffs disagree.

The general rule is that plaintiffs may not recover for mental anguish on breach of contract claims. *See Liberty Homes, Inc. v. Epperson*, 581 So.2d 449, 454 (Ala. 1991). However, an exception to this rule exists "where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *Id.* (quotation and citation omitted). It is well established, however, that the exception is just that, an exception. *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.* 207 F.3d 1351, 1359 (11th Cir. 2000). The Alabama Supreme Court has indicated that it is not eager to "widen the breach in the general rule [prohibiting such damages]." *Volkswagen of America, Inc. v. Dillard,* 579 So.2d 1301, 1304 (Ala.1991).

As the Eleventh Circuit has observed, the majority of cases falling within this exception regard breaches of contract that render homes uninhabitable. *See Ruiz de Molina*,

207 F.3d at (11th Cir. 2000) (citing *Epperson*, 581 So.2d at 454; *Orkin Exterminating Co. v. Donavan,* 519 So.2d 1330 (Ala.1988); *Lawler Mobile Homes, Inc. v. Tarver,* 492 So.2d 297 (Ala.1986); and *Ala. Power Co. v. Harmon*, 483 So.2d 386 (Ala.1986)). "Because a person's home is said to be his 'castle' and the 'largest single individual investment the average American family will make,' these contracts are 'so coupled with matters of mental concern or solicitude or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering.'" *Id.* (quoting *B & M Homes, Inc. v. Hogan,* 376 So.2d 667, 671-72 (Ala.1979)). The court also noted that a smaller number of cases have permitted recovery for emotion damages in connection with such things as burial of loved ones or a physician's promise to deliver a child. *Id.* (citing *Sexton v. St. Clair Fed. Sav. Bank*, 653 So.2d 959, 962 (Ala.1995); *Taylor v. Baptist Med. Ctr, Inc.,* 400 So.2d 369 (Ala.1981)). However, the court refused to allow recovery of emotion damages in connection with the breach of an insurance contract. *Id.* Similarly, the exception has not been extended to cover cases involving boats. *See Wellcraft Marine v. Zarzour,* 577 So.2d 414, 419 (Ala.1990).

In this case, contracts for the rental of hotel rooms do not fall within the exception because they are simply not "so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *Epperson*, 581 So.2d at 454. While hotel rooms may take on the temporary role of one's "castle," as a home would, hotel rooms

13

are drastically dissimilar from homes in terms of the amount of money invested, the amount of care taken in upkeep, and the amount of thought and emotional concern invested. Therefore, the Defendants' Motion for Summary Judgment is due to be GRANTED as to the breach of contract claim.

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Defendants' Motion for Partial Summary Judgment (Doc. # 32) is GRANTED in its entirety. Because the Motion did not address the Plaintiffs' claims pursuant to the ADA, however, these claims will proceed to trial.

DONE this 1st day of June, 2005.

                                                /s/ Mark E. Fuller
                                    CHIEF UNITED STATES DISTRICT JUDGE